UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UDIT GUPTA,

          Plaintiff,

      v.

INTEL SHORT-TERM DISABILITY PLAN, and others,

          Defendants.

Case No. 25-cv-00871-NC

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR JUDGMENT**

Re: ECF 41, 45

Plaintiff Udit Gupta sued Defendants Intel Short-Term Disability Plan, Intel California Voluntary Short-Term Disability Plan, Intel Long-Term Disability Plan, Intel Benefits Administrative Committee, and Reed Group LLC under the Employee Retirement Income Security Act of 1974 (ERISA) for denial of short-term (STD) and long-term disability (LTD) benefits.

The parties filed cross-motions for judgment under Federal Rule of Civil Procedure 52. ECF 41, 45. This Order compromises the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a). For the reasons below, the Court grants in part and denies in part Plaintiff and Defendants' motions for judgment as follows:

- GRANTS Defendants judgment as to Plaintiff's claim for CA-VTSD Plan benefits;
- GRANTS Plaintiff judgment as to his claim for STD Plan benefits;

- ORDERS Defendants to pay STD Plan benefits owed from September 30, 2022, through February 24, 2023;
- REMANDS Plaintiff's LTD benefits claim for further development of the record and consideration by Reed; and
- GRANTS Defendants summary judgment as to Plaintiff's second claim for breach of fiduciary duty.

I.  **BACKGROUND**

A.  **Factual Background**

i.  *Employment with Intel and Relevant Plan Terms*

The following facts are undisputed.  Plaintiff worked as a Cloud Software Development Engineer at Intel.  ECF 45 at 12.  Intel offered California employees STD and LTD benefits administered by Reed.  *Id.* at 8.  The STD benefits consisted of two plans, the Short Term Disability Plan (STD Plan) and the California Voluntary Short Term Disability Plan (CA-VSTD Plan).  *Id.* at 8–9.  Participants may obtain benefits under both the STD and CA-VSTD Plans to receive 100% of their pre-disability earnings.  *Id.* at 10. To be eligible for either the STD or CA-VSTD Plans, a participant must be disabled as defined by the Plans as "unable to perform your regular and customary work because of physical or mental illness, injury, or a condition . . . that has been certified by a Physician." *Id.* at 9.  CA-VSTD Plan benefit denials are appealable to California Employment Development Department (EDD) and governed solely by California.  *Id.* at 10.  STD Plan benefit denials are appealable to Reed.  ECF 38-1 at 300.

To be eligible for the LTD plan, a participant must be "continuously disabled" for at least fifty-two weeks.  ECF 45 at 11.  To be considered disabled for the LTD plan, a participant must be "unable to perform the duties you are normally required to perform in your Regular Occupation due to an illness or injury."  ECF 38-1 at 312.  Regular occupation is defined as "the occupation you routinely perform at the time the Disability begins."  *Id.*

United States District Court
Northern District of California

2

United States District Court
Northern District of California

### ii. Claim for Benefits and Termination

From February through September 2022, Plaintiff requested, and Reed approved, leave under the STD and CA-VTSD plans. ECF 45 at 12. Plaintiff had submitted supporting medical records from three physicians: John Faber (psychiatrist), Minh Tran (chiropractor), and Courtney Jonson (acupuncturist/functional medicine doctor). ECF 41 at 8.

In October 2022, Plaintiff requested to extend his leave through November 2, 2022. ECF 38-1 at 534. Reed obtained a peer review report from psychiatrist Stuart Gitlow to assist in determining whether to approve Plaintiff's request. ECF 45 at 13–14. Gitlow concluded that Plaintiff had a diagnosis of mood disorder, but that the documentation was insufficient to demonstrate that Plaintiff was disabled within the Plan's definition. ECF 38-1 at 1969. So, on October 5, 2022, Reed denied Plaintiff's request to continue STD and CA-VTSD plan benefits. ECF 45 at 12. Plaintiff did not file an appeal with California EDD for his CA-VTSD benefits. ECF 51 at 30.

Plaintiff appealed the STD Plan denial to Reed. ECF 38-1 at 1237. Reed conducted an additional evaluation of Plaintiff's claim with peer reviews from psychiatrist Fariha Qadir and internist Steven Winkel. ECF 38-1 at 1241. Reed sent Plaintiff Qadir and Winkel's reports to rebut and allowed him to submit additional evidence, which Plaintiff did. *Id.* at 1245. Qadir and Winkel reviewed Plaintiff's additional information and submitted addendum reports. *Id.* In January 2023, Reed issued a final determination upholding its original denial. *Id.*

In August 2023, Plaintiff's counsel requested to initiate an LTD claim. ECF 45 at 14. Reed informed Plaintiff that he was ineligible for an LTD claim because his STD benefits had been denied, so he failed to meet the fifty-two week elimination period. *Id.* On August 2, 2023, Intel terminated Plaintiff. *Id.* at 14.

### B.    Procedural Background

In January 2025, Plaintiff filed the complaint asserting ERISA claims for denial of benefits and breach of fiduciary duty. ECF 1. In February 2026, Plaintiff moved for

3

judgment as a matter of law. ECF 41. Intel Defendants and Reed opposed. ECF 52, 53. Plaintiff replied. ECF 54, 55. Also in February 2026, Intel Defendants moved for judgment as a matter of law. ECF 45. Reed joined Intel Defendants' motion. ECF 50. Plaintiff opposed. ECF 51. Intel Defendants and Reed replied. ECF 56, 57.

The parties have consented to magistrate judge jurisdiction. ECF 8, 24, 26.

## I.    LEGAL STANDARD

Plaintiff's first claim for benefits must be evaluated under a different standard than traditional summary judgment. "In the ERISA context, summary judgment generally is the vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record and 'the non-moving party is not entitled to the usual inferences in its favor.'" *Raphaely v. Gartner Inc.*, No. 20-cv-06166-DMR, 2022 WL 3445942, at *7 (N.D. Cal. Aug. 17, 2022) (quoting *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1192 n.3 (9th Cir. 2007)).

As to Plaintiff's second claim for breach of fiduciary duty, the typical summary judgment standard applies. Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c);

4

*Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 572 U.S. 651 (citing *Liberty Lobby*, 477 U.S. at 255).

## II. CLAIM ONE: RECOVERY OF PLAN BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

### A. Plaintiff Failed to Exhaust Administrative Remedies for the CA-VTSD Plan

"Plaintiffs must exhaust their administrative remedies prior to pleading a cause of action under an ERISA claim." *Start v. Apple Computer, Inc.*, No. C95-20149 PVT, 1996 WL 161630, at *6 (N.D. Cal. Mar. 29, 1996) (citing *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir. 1980)).

Plaintiff's STD benefits were administered through the STD Plan and CA-VTSD Plan. The October 5, 2022 denial letter states that: "to appeal this denial of CA [VTSD] benefits, you must send a letter to any Employment Development Department (EDD) office postmarked no more than 30 days from the date of this notice." ECF 38-1 at 535. The CA-VTSD Plan states that a participant "must file any appeals with the California [EDD]." *Id.* at 306. Plaintiff has not convinced the Court that the CA-VTSD Plan appeals process is permissive rather than mandatory. ECF 56 at 2. Both the denial letter and the Plan language are clear that any appeal "must" be filed with EDD. ECF 38-1 at 306, 535.

Plaintiff did not file an appeal with EDD. Because Plaintiff failed to do so, he did not exhaust his administrative remedies and cannot now bring suit in federal court. *California Bus. Bureau, Inc. v. Flores*, No. SAcv0900192CJCRNBX, 2009 WL 10675576, at *2 (C.D. Cal. May 12, 2009) (plaintiffs must comply with a plan's own internal review procedures before suing in federal court). Accordingly, the Court grants Defendants summary judgment as to Plaintiff's claim under the CA-VSTD Plan.

### B. The Abuse of Discretion Standard of Review Applies

ERISA allows participants in an employee benefit scheme to bring a civil action to

recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). Courts apply a de novo standard of review to actions for benefits recovery unless the plan grants discretionary authority to the trustee or fiduciary. *Firestone Tine & Rubber Co. v. Bruch*, 489 U.S. 101, 114–115 (1989). "When a plan does not confer discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,' a court must review the denial of benefits de novo . . . .'" *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (quoting *Firestone*, 489 U.S. at 115). "But if the plan does confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." *Id.* (emphasis in original). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Id.*

Here, Intel unambiguously conferred discretionary authority to Reed. The Plan states that Reed, as a party "who has delegated authority from the plan administrator, has sole, discretionary authority to grant or deny benefits, to make findings of fact in any benefit determination, and to interpret the terms of each of the plans." ECF 38-1 at 40–41. For self-funded benefits, as is the case here, the Plan further states "the plan administrator has delegated authority to [Reed] to interpret and construe those benefit program[s] and to determine all factual and legal questions under such benefit programs with respect to all claims for benefits and appeals of denied claims," including "interpreting and construing the plan and benefit programs and any ambiguous or unclear terms, and determining the amount of benefits, if any, you are entitled to receive."[1]

As Plaintiff admits, Reed "has discretion to interpret plan terms." ECF 41 at 24. Courts routinely find that plans "granting the power to interpret plan terms and to make

---

[1] The parties also point to the Purchase Services Agreement between Reed and Intel as evidence to dispute Reed's discretion. ECF 41 at 25; ECF 45 at 12. Neither party has cited authority establishing the relationship or relevance of the Purchase Agreement with the Plans at issue. *See generally* ECF 41, 45. ERISA contemplates discretion granted to a third party claim administrator by the relevant plan, not by an independent contract with the plan administrator. Accordingly, the Court does not consider the Purchase Agreement's language in its' analysis.

6

final benefits determinations" confer discretion. *Abatie*, 458 F.3d at 963; *see Raphaely*, 2022 WL 3445942, at \*7 (plan granted discretionary authority where administrator could "construe and interpret the Plan," "determine the status and rights of Employees," and "determine the amount, manner and time of payment of any benefits"). So, the Court applies the abuse of discretion standard of review.

### C. Reed Abused Its Discretion

Plaintiff argues Reed failed to fulfill its fiduciary responsibilities and committed procedural irregularities, so the Court should apply de novo review. Specifically, Plaintiff contends Reed erred by (1) omitting his job description and duties; (2) ignoring his treating physicians' opinions and applying a new "objective medical evidence" standard; and (3) refusing to consider an LTD claim. ECF 41 at 10, 15, 28. The Court will examine each issue in turn.

Under the abuse of discretion standard, the court asks whether it is "left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)). A "plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Id.* at 675 (citing *Conkright v. Frommert*, 559 U.S. 506, 521 (2010)). A plan administrator abuses its discretion if its decision is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* at 676. Similarly, if a plan administrator "renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination," it also abuses its discretion. *Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1042 (9th Cir. 2014) (citation omitted).

"Even if the ERISA plan grants discretion to the administrator, the court must employ a 'more searching' standard of review when the court has a reason to believe that the administrator did not act in accordance with his fiduciary responsibilities." *Duvall v. Reliance Standard Life Ins. Co.*, 646 F. Supp. 2d 1188, 1198 (E.D. Cal. 2009) (citations

omitted). In other words, courts apply de novo review despite a grant of discretion "where the administrator violates the procedures mandated by ERISA in a way that is 'so flagrant so as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm.'" *Id.* (quoting *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005)). "Where procedural irregularities are not so egregious as to warrant *de novo* review, they nonetheless may reduce the deference afforded to the claim denial." *Chacko v. AT&T Umbrella Benefit Plan No. 3*, 690 F. Supp. 3d 1123, 1155 (E.D. Cal. 2023) (quoting *Cuevas v. Peace Officers Rsch. Ass'n of Cal. Legal Def. Fund*, No. 14-cv-02540-BLF, 2016 WL 2754434, at *5 (N.D. Cal. May 12, 2016)).

*i.*    *Reed Applied a Reasonable Job Description*

Plaintiff contends Reed erred by denying STD benefits without considering his job description. ECF 41 at 10.

Plaintiff has not presented evidence of anything so extreme. As Defendants note, Plaintiff's own description of his job duties include "design[ing], develop[ing], and co-ordinat[ing] responsibilities for software development." ECF 52 at 12; ECF 38-1 at 423, 570. Winkel and Qadir's reports both state verbatim this job description and, while Gitlow's does not, his decision was not in a vacuum—he knew Plaintiff was a Cloud Software Development Engineer at a large company. ECF 38-1 at 1218, 1228, 1965.

The Plan language supports this interpretation. It states an employee is eligible and disabled "when you are unable to perform your regular and customary work." ECF 38-1 at 296. It does not mandate that Reed evaluate all potential aspects of a claimant's role, nor does ERISA require more. "As a matter of logic, it would be impossible to review plan language with respect to a claim without making some characterization of the demands of the claimant's job tasks." *Martin v. Cont'l Cas. Co.*, 96 F. Supp. 2d 983, 992 (N.D. Cal. 2000). A plan cannot "be expected to define the tasks and details of each plan beneficiary's job description." *Id.* "The real question . . . is whether the use of terms is reasonable, or instead unreasonably creates arbitrary distinctions upon which claims with

8

merit may be denied." *Id.* Reed reasonably applied Plaintiff's own job description in making its decision.

The Court is not persuaded by Plaintiff's cited authority. In *Lundquist*, the plan administrator "failed to obtain any vocational evidence," "ignored plaintiff's own description of her job functions, inaccurately described plaintiff's job functions to those reviewing plaintiff's claim, and failed to undertake any investigation into the specifics of plaintiff's job responsibilities." *Lundquist v. Continental Cas. Co.*, 394 F. Supp. 2d 1230, 1250 (C.D. Cal. 2005). But here, Reed and the consulting physicians' utilized Plaintiff's own job description. In *Chacko*, the administrator "did not meaningfully and adequately consider the physical requirements of plaintiff's job" where the plan defined "totally disabled" as "incapable of performing the requirements of a job other than the one for which the rate of pay is less." *Chacko*, 690 F. Supp. 3d at 1157. The *Chacko* court determined that the administrator failed to comport with the plan's terms which "necessarily require[d] an assessment of whether the claimant is capable of performing the job requirements of their existing position and any potential alternative occupations." *Id.* The Plan at issue does not require Reed to conduct such an in-depth job duty analysis to determine whether Plaintiff is disabled. Accordingly, Reed did not abuse its discretion on this issue.[2]

> ii.    *Reed Improperly Dismissed Plaintiff's Treating Physicians' Opinions*

Plaintiff next argues Reed discredited his treating physicians' opinions in favor of its' consulting medical experts paper reviews. ECF 41 at 15.

"While 'plan administrators are not obliged to accord special deference to the opinions of treating physicians' in the ERISA context, they 'may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'" *Przybyla v. Prudential Ins. Co. of Am.*, No. 3:24-cv-01090-JSC, 2025 WL 28446, at *10

---

[2] "No evidence outside of the administrative record is to be considered when the abuse of discretion standard is employed." *Martin*, 96 F. Supp. 2d 990 (citation omitted). Accordingly, Plaintiff's Request for Judicial Notice, ECF 42, to augment the record with information regarding his job duties is denied.

9

United States District Court
Northern District of California

(N.D. Cal. Jan. 3, 2025) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).  "[A]s compared to physicians who conduct only paper reviews, treating physicians are far better positioned to assess a claimant's credibility, and 'one would expect any doubts as to whether [Plaintiff] in fact suffered the pain he alleged . . . would be reflected in the medical records.'"  *Id.* (quoting *Shaikh v. Aetna Life Ins. Co.*, 445 F. Supp. 3d 1, 6 (N.D. Cal. 2020)).

Plaintiff's physicians consistently documented high anxiety, vestibular dysfunction, and resulting issues with sleep (ECF 38-1 at 637, 638, 639, 641, 661, 701, 1068, 1069, 1073, 1910, 1916); dizziness (*id.* at 1164, 1910–1911, 1913, 1926); and poor concentration and clear communication (*id.* at 637, 638, 661, 701, 1068, 1069, 1073, 1928).  In response, Plaintiff frequently visited his physicians for care.  ECF 45 at 15–20 (appointments and communication with Faber every month), 20–22 (weekly visits with Jocson); ECF 38-1 at 1910–1956 (four to five appointments a month with Tran).  He also considered and tried various medications to ease his anxiety including, for example, Xanax, Remeron, Lunesta, Viibyrd, and Trazodone.  ECF 38-1 at 660, 702, 1068, 1069, 1070, 1929.  He also received various treatments and underwent testing.  *See, e.g.*, *id.* at 636 (blood tests for stress, GI mapping), 1068 (QEEG), 1911 (neurorehabilitation and NeuroSensorimotor Integrator exercises, laser photobiomodulation therapy).

Reed based the initial October 2022 STD denial on Gitlow's peer review report.  ECF 45 at 25.  Gitlow noted that "Faber indicates a variety of moderately severe and severe functional deficits" and "Tran DC indicates a diagnosis of vestibular dysfunction with visual disturbances" as well as "significant impairment of concentration, ability to function in proximity to others, and ability to perform regular job functions."  ECF 38-1 at 1966.  Yet, Gitlow concluded that "[d]ocumentation, though extensive, provides minimal detail with respect to clinical psychiatric findings" to support the presence of functional impairments.  *Id.* at 1967.  For example, Gitlow stated that "the most recent findings not[e] the presence of anxiety and slightly restless behavior," but Gitlow still found "no diagnosis is present from a psychiatric perspective that would prevent the claimant from working."

*Id.* at 1968.  Gitlow further asserted that "[t]he records do not include any findings of abnormal attention, focus, concentration, memory, or other aspects of cognitive function." *Id.*

After Plaintiff appealed Reed's October 2022 STD denial, Reed sought additional peer reviews from Qadir and Winkel.  Qadir's review concluded Plaintiff had no functional impairments because there was no documented supportive medical evidence.  ECF 38-1 at 1242.  Qadir stated that "[w]hile subjective symptoms are noted, there is no indication that the claimant is actively or acutely suicidal, homicidal, psychotic, manic, aggressive, lethargic, or noted to have significant abnormalities of psychomotor activity." *Id.*

Winkel's report noted that he, an internist, "defer[ed] determination of impairment related to psychological issues to the mental health professionals, as this is not within the scope of my specialty." *Id.* at 1244.  Then, Winkel stated that Plaintiff has not tried "antidepressants" or had a psychiatrist evaluate him (ignoring the fact that Faber is a psychiatrist whom Plaintiff saw monthly). *Id.*  Winkel also noted Plaintiff could have done such as a tilt table test for dysautonomia, a MoCA test, or other laboratory testing in addition to submitting formal QEEG reports. *Id.* at 1244–1245.

Reed submitted Qadir and Winkel's reports to Plaintiff to rebut and provide additional evidence.  ECF 38-1 at 1245.  Plaintiff submitted additional notes from his providers and results from his tilt-table, MoCA, and Total Brain tests in addition to formal QEEG reports.  ECF 51 at 21–24.  Qadir and Winkel reviewed Plaintiff's evidence and drafted additional addendums which affirmed their original reports.

Qadir's addendum noted Faber's December 2022 treatment records that Plaintiff had continuing issues with sleep, staying on topic, focus, panic attacks, and anxiety. *Id.* at 1245–1246.  Despite Faber's records, Qadir concluded that Plaintiff's examinations "do not provide evidence of functional impairment in areas of communication, speech, cognition such as concentration/focus, memory," "deficits in problem-solving or decision-making," or "maintaining adequate pace or focus." *Id.* at 1246.  Winkel concluded in his addendum that the "medical records contain non-standardized test results" without

United States District Court
Northern District of California

explanation. *Id.* at 1247. Then, directly after reaffirming that Winkel would "defer determination of impairment related to psychological issues to the mental health professionals," he stated that "claimant has not under[gone] psychiatric evaluation and treatment." *Id.* at 1247–1248. He noted that Plaintiff's MoCA score was "just below the lower limit of normal indicating very mild cognitive defect" but does not address the other additional testing submitted. *Id.* at 1248.

Defendants abused their discretion by ignoring all the evidence provided by Plaintiff's treating physicians. The Court is persuaded by the reasoning in *James v. AT & T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 875 (N.D. Cal. 2014). There, the court found the administrator abused its discretion by ignoring the plaintiff's treating psychiatrist's opinion which detailed issues with anxiety, concentration, depression, and lethargy. The administrator rejected the psychiatrist's opinion because "there [were] no medical records highlighting any objective or severe psychiatric complaints in any detailed mental status examination." *Id.* It was error to dismiss the "opinion as insufficient based on the absence of supporting medical evidence." *Id.* (quoting *Farhat v. Hartford Life and Acc. Ins. Co.*, 439 F. Supp. 2d 957, 973 (N.D. Cal. 2006)).

Similarly, Qadir and Winkel ignored and dismissed Plaintiff's treating physicians' opinions in favor of their own. "Conducting a review of [plaintiff's] eligibility for [STD] benefits without the benefit of [his] treating physicians' input effectively amounts to ignoring a large portion of evidence in [plaintiff's] favor." *James*, 41 F. Supp. 3d at 877. Qadir and Winkel did not attempt to contact Plaintiff's providers to discuss. Further, it appears Winkel did not appreciate that Plaintiff was being treated by a psychiatrist, Faber, as he stated twice that "claimant has not under[gone] psychiatric evaluation and treatment." ECF 38-1 at 1244, 1247–1248. Even more alarming is the fact that Winkel, in acknowledging he is not a mental health provider, repeatedly asserted conclusions as if he were. *Id.* Nor do Qadir or Winkel explain what evidence supports their conclusions regarding Plaintiff's ability to work. "Without 'rely[ing] on other contradictory evidence,' the plan abused its discretion by failing to identify 'reliable evidence that conflicts with

United States District Court
Northern District of California

12

[the] treating physican[s'] evaluation.'" *Id.* (quoting *Farhat*, 439 F. Supp. 2d at 973).

"[C]ourts should 'consider[ ] the unique nature of psychiatric disabilities, which often involve subjective complaints.'" *James*, 41 F. Supp. 3d at 879 (quoting *Burnett v. Raytheon Co. Short Term Disability Basic Ben. Plan,* 784 F.Supp.2d 1170, 1184 (C.D. Cal. 2011)). The peer review reports complain that Plaintiff had not provided objective evidence of his condition. ECF 38-1 at 1968, 1242, 1244–45. Qadir stated that Plaintiff is not "actively or acutely suicidal, homicidal, psychotic, manic, aggressive" so concludes he is not disabled. ECF 38-1 at 1242. Winkel also remarks that Plaintiff should have been referred to specialists if his condition was so poor. *Id.* at 1221, 1226. "But the plan does not explain why a person suffering debilitating [anxiety] must also be [actively or acutely suicidal, homicidal, psychotic, manic, aggressive] or why a referral to another provider (despite the fact that [Plaintiff] was already regularly seeing [physicians] and despite the fact that a referral is merely "typical" in such situations) is a dispositive factor in determining psychiatric disability." *James*, 41 F. Supp. 3d at 880–881.

The Plan ignored Plaintiff's evidence without a reasonable basis to do so, "while only pointing to the absence of certain discrete indicators and evidence of an imprecise and amorphous nature" so abused its discretion. *James*, 41 F. Supp. 3d at 881. Remand is unnecessary when "no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'" *Id.* (citations omitted). Accordingly, the Court grants Plaintiff summary judgment and awards STD benefits through February 24, 2023.

### iii. *Plaintiff's LTD Claim is Remanded for Consideration*

Plaintiff asserts Reed committed error by refusing to consider his LTD claim. ECF 41 at 28. Defendants contend Plaintiff did not qualify for LTD benefits because he was not continuously disabled for fifty-two weeks. ECF 52 at 19.[3]

---

[3] Defendants argue Plaintiff is judicially estopped from asserting his LTD benefits claim because he simultaneously filed for unemployment benefits which required him to certify willingness and ability to work. ECF 45 at 37. Defendants' authority is unpersuasive. *Mihok v. Magnetek, Inc.*, No. cv0102446WJR(CWX), 2002 WL 1162843, at *5 (C.D. Cal.

As discussed above, Defendants abused their discretion in denying Plaintiff's STD claim which demonstrated he was disabled for fifty-two weeks until February 2023. However, the LTD Plan applies a different definition for disability than the STD Plans. It requires a participant to be "unable to perform the duties you are normally required to perform in your Regular Occupation due to an illness or injury." ECF 38-1 at 312. The Court lacks evidence regarding Plaintiff's condition past February 2023 and, even if it did have that evidence, it would be improper to evaluate it and make an LTD determination. *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996) (district court committed error by ordering benefit payments beyond period plaintiff had not applied for or had been considered by the plan). Further record development is necessary to determine Plaintiff's LTD eligibility by, for example, completing a vocational report. *Kowalski v. Farella, Braun & Martel, LLP*, No. 06-cv-3341 MMC, 2008 WL 5397511, at *15 (N.D. Cal. Dec. 23, 2008) (remanding claim to administrator where court lacked full record and vocational report). Accordingly, the Court remands Plaintiff's LTD claim to Defendants for consideration.

### III.    CLAIM TWO: BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(a)(3)

Plaintiff argues Defendants breached their fiduciary duties by refusing to consider his LTD claim. ECF 41 at 28. Defendants argue Plaintiff's claim should be dismissed because it is really an ERSIA claim for LTD benefits so it is duplicative of Plaintiff's first claim. ECF 45 at 35.

"To prevail on a claim for breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant;

---

May 7, 2002) (plaintiff cited termination, rather than disability, as reason for applying for unemployment benefits and sent out resumes to future employers); *Godbolt v. Hartford Life & Acc. Ins. Co.*, No. 3:02-cv-192J25HTS, 2005 WL 2456200, at *4 (M.D. Fla. Mar. 15, 2005) (non-binding authority merely referencing unemployment application without any judicial analysis).

(3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *McBean v. United of Omaha Life Ins. Co.*, No. 18cv166-MMA (JLB), 2019 WL 1508456, at *8 (S.D. Cal. Apr. 5, 2019) (internal citations and quotations omitted).

Plaintiff's claim fails for two reasons. First, as to the Intel Defendants, they are not fiduciaries and took no fiduciary actions because Reed managed and administered the Plans. *See* ECF 38-1 at 1761–1762 (Reed case manager noting Plaintiff's ineligibility for LTD), 1776 (same); *McBean*, 2019 WL 1508456, at *8 (business decisions incidentally impacting ERISA plans are not fiduciary actions). Second, Plaintiff's claims for benefit denial and breach of fiduciary duty are duplicative because they rely on the same injury, LTD benefit denial. *Ehrlich v. Hartford Life & Accident Ins. Co.*, No. 20-cv-02284-JST, 2021 WL 4472846, at *2 (N.D. Cal. July 15, 2021); *but see Echague v. Metro. Life Ins. Co.*, 43 F. Supp. 3d 994, 1013 (N.D. Cal 2014) (permitting (a)(3) claim because insurer and plan administrator divided responsibilities for implementing the plan). Accordingly, the Court grants Defendants' summary judgment on Plaintiff's second claim for breach of fiduciary duty.

## IV.    CONCLUSION

Accordingly, the Court grants in part and denies in part Plaintiff and Defendants' motions for judgment as follows:

- GRANTS Defendants judgment as to Plaintiff's claim for CA-VTSD Plan benefits;
- GRANTS Plaintiff judgment as to his claim for STD Plan benefits;
- ORDERS Defendants to pay STD Plan benefits owed from September 30, 2022, through February 24, 2023;
- REMANDS Plaintiff's LTD benefits claim for further development of the record and consideration by Reed; and
- GRANTS Defendants summary judgment as to Plaintiff's second claim for breach of fiduciary duty.

15

The parties are ORDERED to meet and confer on any remaining issues, such as attorneys' fees and costs. If the parties can agree on the remaining issues, Plaintiff must submit a Proposed Judgment within twenty-one (21) days of this order, by April 15, 2026.

If the parties require court intervention to resolve any remaining issues, the parties shall submit a Joint Report within twenty-one (21) days of the issuance of this order, by April 15, 2026, explaining the nature of their remaining disputes and proposing an appropriate schedule for resolving them.

**IT IS SO ORDERED.**

Dated: March 25, 2026

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

16